***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties pursuant to a pre-trial agreement, and following the hearing before the Deputy Commissioner, as:
 STIPULATIONS 1. The parties are subject to the N.C. Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between Plaintiff and Defendant.
3. The employee's average weekly wage is $112.00 per week.
4. The employee sustained an injury on or about January 13, 2005, with the exact date to be determined by the Industrial Commission.
5. The employee's right knee patellar fracture injury arose out of and in the course of employment and is compensable.
6. The issues presented for determination are:
 a. Whether Plaintiff's back condition is causally related to her injury of January 13, 2005;
 b. Whether Plaintiff's right knee meniscal tear is causally related to her injury of January 13, 2005;
 c. What, if any, indemnity benefits Plaintiff is entitled to receive; and,
 d. Whether either Plaintiff or Defendant is entitled to reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 *********** EVIDENCE
1. The following Stipulated Exhibit was received before the Deputy Commissioner:
 a. Stipulated Exhibit 1: North Carolina Industrial Commission forms, payroll records, TTD records, medical records, et cetera.
2. The following witness testified before the Deputy Commissioner:
 a. Peggy Lee Tapia *Page 3 
3. The following depositions were received into evidence following the hearing before the Deputy Commissioner:
 a. Dr. Robert C. Martin (March 8, 2006)
 b. Dr. David C. Miller (March 9, 2006)
 c. Dr. Greig V. McAvoy (June 7, 2006)
 d. Dr. Josephus Bloem (June 27, 2006)
 e. Dr. Robert C. Martin (March 28, 2007)
 ***********
Based on the evidence of record and the reasonable inferences arising therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing of this matter before the Deputy Commissioner, Plaintiff was a 68-year-old female who had completed her General Equivalency Diploma and studied criminal justice in college. Plaintiff received training as a nurse's aide and basic emergency medical technician. Plaintiff has a vocational history of police and security work.
2. Plaintiff began working for Defendant in 1995, and mainly works in the deli although she would also assist with the offloading of "floats." Plaintiff testified that she spends the majority of her shift in a standing position, and is required to lift from five to fifty pounds. Plaintiff explained that her deli duties require her to wait on customers, restock items, and set up and clean the cooking areas, tasks that require her to lift, bend, stoop, and push various weights.
3. On January 13, 2005, Plaintiff was engaged in her duties of closing up the deli. She had just finished cleaning the floor with a hose when a customer came up to the deli and placed an order. Plaintiff filled the order and turned to put the meat back in the case, when she *Page 4 
slipped on the wet floor and landed on her right knee. Plaintiff did not believe that she was seriously injured, so she completed her shift and went home for the evening.
4. Plaintiff's pain increased and she went to the emergency room for medical attention, where she found out that her right knee was fractured. She was written out of work and instructed to follow up with an orthopaedic doctor.
5. Plaintiff saw Dr. Greig V. McAvoy, with whom she had treated previously for an unrelated back problem. Dr. McAvoy performed a physical examination, which revealed moderate swelling to the knee. He diagnosed a patellar fracture, minimally displaced, and prescribed a knee immobilizer and pain medication. Dr. McAvoy directed Plaintiff to therapy to obtain a knee brace.
6. Plaintiff returned to Dr. McAvoy on January 17, 2005, with complaints of the knee immobilizer not fitting properly. Dr. McAvoy recommended wrapping an ACE bandage at the bottom of the knee immobilizer to help keep it in place. Dr. McAvoy released Plaintiff to work with restrictions of no prolonged standing or walking, and the further restriction that she would have to wear her knee immobilizer.
7. Plaintiff had problems with the knee immobilizer due to the poor fit and it made her fall on more than one occasion.
8. Plaintiff returned to work in a light-duty status. She worked anywhere between an hour a day to two hours and forty-five minutes a day. Plaintiff was paid $5.50 an hour, and also received temporary partial disability benefits by the workers' compensation servicing agent.
9. The workers' compensation servicing agent directed Plaintiff to treat with Dr. Robert C. Martin. Dr. Martin examined Plaintiff on February 23, 2005. Dr. Martin diagnosed a *Page 5 
patellar fracture with indications of healing. Dr. Martin wrote Plaintiff out of work and instructed her to continue using the knee brace.
10. Plaintiff returned to Dr. Martin on March 24, 2005. At that time, Dr. Martin released Plaintiff to work with restrictions of sitting only, and continued her physical therapy.
11. On April 21, 2005, Dr. Martin released Plaintiff from care with a 5% permanent partial impairment rating to her knee, and Plaintiff returned to work for Defendant approximately six days after her release by Dr. Martin. Plaintiff testified that her hours varied from 11 to 17 hours a week. She was assigned to work in the deli. Plaintiff washed dishes, cleaned grease, scrubbed the floors, and took out the trash, all of which caused her back and right knee to hurt. Plaintiff explained that she tried not to sit during her shift, as that caused more pain than if she continued to stand and move around. Plaintiff testified that she would begin to notice the pain in her knee about midway through her shift.
12. Plaintiff's request to the workers' compensation servicing agent to go to a chiropractor for treatment to her back was denied by the servicing agent. Plaintiff then presented, without the prior approval of the servicing agent, to Dr. David C. Miller, who is in the same practice as Dr. Martin, on May 3, 2005. Dr. Miller performed a physical examination and diagnosed Plaintiff with degenerative spondylolisthesis at L4-5 and spinal stenosis at the same area. Plaintiff underwent an intramuscular injection of cortisone.
13. Plaintiff saw Dr. Josephus Bloem without the prior approval of the workers' compensation servicing agent on August 31, 2005, with complaints of right knee, left heel, and low back pain. In regard to Plaintiff's heel, Dr. Bloem diagnosed Plaintiff with left heel cord bursitis and prescribed physical therapy. *Page 6 
14. In regard to Plaintiff's knee, Dr. Bloem determined that not all of Plaintiff's symptoms could be explained by the fact that Plaintiff's patella had been fractured and had healed in an unfortunate position. An MRI of Plaintiff's knee showed that, in addition to the fracture, Plaintiff had a meniscal tear as well. Dr. Bloem explained how the injury to Plaintiff's patella could have also resulted in the tearing of her meniscus, and opined to a reasonable degree of medical certainty that Plaintiff's meniscal tear was caused by Plaintiff's fall at work on January 13, 2005.
15. In regard to Plaintiff's back, Dr. Bloem left the diagnosis of Plaintiff's back condition to Dr. Miller's discretion. Dr. Bloem explained how limping or walking on crutches can aggravate an individual's back, and opined to a reasonable degree of medical certainty that Plaintiff's back problems were an aggravation of Plaintiff's pre-existing back condition due to the fall on her knee and her subsequent difficulty in walking.
16. Dr. McAvoy, who had treated Plaintiff for her pre-existing back problem, opined to a reasonable degree of medical certainty that the January 13, 2005, fall had no relation to the problems she subsequently had with her back. Dr. McAvoy acknowledged that the fall could have aggravated Plaintiff's pre-existing back condition, but opined that in this case it had not.
17. Regarding Plaintiff's meniscal tear, Dr. McAvoy opined to a reasonable degree of medical certainty that the tear was due to degenerative changes in the knee existing prior to Plaintiff's January 13, 2005, workplace injury. Dr. McAvoy acknowledged that trauma can accelerate such degenerative joint disease, but believed that the January 13, 2005, fall was inconsistent with such trauma.
18. Dr. Miller, who treated Plaintiff's back condition following the January 13, 2005, fall, testified that Plaintiff's symptomology in her back and legs following her workplace fall *Page 7 
appeared "very much the same" as was described in Dr. McAvoy's notes concerning Plaintiff's pre-existing back condition. Dr. Miller acknowledged that there was a reasonable possibility that Plaintiff could have had recurrent symptoms of back and leg pain following her workplace fall, if her testimony that she had no such pain prior to the fall was credible, but he also noted that it was pretty typical for an individual with Plaintiff's back condition to have pain and exacerbation just with day-to-day living.
19. In regard to Plaintiff's meniscal tear, Dr. Martin testified that, because he initially treated Plaintiff only for her patellar fracture, he was unable to offer any opinion as to the causal relation between the tear in the meniscus and Plaintiff's January 13, 2005, fall. Nonetheless, Dr. Martin agreed with Dr. McAvoy that the type of fall Plaintiff apparently suffered would likely not have resulted in a meniscal tear. However, Dr. Martin acknowledged that, in his initial examination of Plaintiff's knee, a test to stress the meniscus to see whether it was actually torn did produce an equivocal result.
20. Concerning the tear in Plaintiff's meniscus, the Full Commission gives greater weight to the testimony of Dr. Bloem, who diagnosed and treated Plaintiff for her torn meniscus, than to Dr. McAvoy and Dr. Martin, who were unaware of the tear at the time they treated Plaintiff for her fractured patella. The Full Commission therefore finds, based on the greater weight of the evidence, that Plaintiff's meniscal tear arose as a result of Plaintiff's January 13, 2005, compensable workplace fall.
21. Concerning Plaintiff's back condition, the Full Commission gives greater weight to the testimony of Dr. McAvoy, who treated Plaintiff's pre-existing back condition, and Dr. Miller, who treated Plaintiff's back condition following her workplace fall, than to the testimony of Dr. Bloem, who largely deferred to Dr. Miller regarding the diagnosis and treatment of *Page 8 
Plaintiff's back condition. The Full Commission therefore finds, based on the greater weight of the evidence, that Plaintiff's back condition neither arose as a result of, nor was materially aggravated by, Plaintiff's January 13, 2005, compensable workplace fall.
22. As of the date of the hearing before the Deputy Commissioner, Plaintiff continued to work in a part-time status for Defendant. The Full Commission finds, based on the greater weight of the evidence, that Plaintiff is unable to earn the wages she was earning prior to her January 13, 2005, workplace fall due to the medical restrictions resulting from that compensable workplace injury.
23. The record of evidence before the Full Commission includes limited evidence regarding the reasonableness of the cancellation by Defendant of Dr. Bloem's February 20, 2006, scheduled deposition. The Full Commission finds insufficient basis in that limited evidence to determine that Defendant's cancellation of the deposition on the morning of February 20, 2006, was unreasonable; however Defendant should be responsible for any cancellation fee charged.
24. The Full Commission finds that Plaintiff did not bring or prosecute the present action without reasonable ground, and that Defendant did not defend the present action without reasonable ground.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to her right knee, which included a patellar fracture and a meniscal tear, on or about January 13, 2005. N.C. Gen. Stat. § 97-2(6) *Page 9 
2. Plaintiff's back condition is a pre-existing condition that was not materially aggravated by her January 13, 2005, workplace accident, or by the right knee injury arising therefrom. Plaintiff's back condition is therefore not a compensable injury under the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6); Anderson v. Northwestern Motor Co.,233 N.C. 372, 64 S.E.2d 265 (1951).
3. Plaintiff is entitled to payment for all reasonable medical expenses incurred or to be incurred as a result of her compensable right knee patellar fracture and meniscal tear, for so long as said treatment effects a cure, gives relief, or lessens Plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
4. Plaintiff has demonstrated partial disability by producing evidence that, due to the consequences of her workplace injury, "[s]he has obtained other employment at a wage less than that earned prior to the injury." Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993). Plaintiff is therefore entitled to temporary partial disability benefits for the wage loss that she has sustained due to having to work fewer hours as a result of her compensable injury by accident. N.C. Gen. Stat. § 97-30.
5. Although the Full Commission has found insufficient evidence to conclude that Defendant's cancellation of Dr. Bloem's February 20, 2006, deposition which was scheduled and properly noticed by Plaintiff was unreasonable, the Full Commission in its discretion concludes that it is appropriate to obligate Defendant to pay the fee for Dr. Bloem's cancelled deposition pursuant to Workers' Compensation Rules of the North Carolina Industrial Commission, Rule 612(1). *Page 10 
6. Because neither Plaintiff nor Defendant "brought, prosecuted, or defended [the present action] without reasonable ground," the Full Commission concludes that reasonable attorney's fees under N.C. Gen. Stat. § 97-88.1 are not appropriately assessed against either party.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendant shall pay to Plaintiff temporary partial disability (TPD) benefits at a rate of two-thirds (2/3) of the difference between Plaintiff's pre-injury average weekly wage of $112.00, and Plaintiff's actual weekly wage based upon her medically imposed restrictions, per week from January 13, 2005, until the present and continuing for 300 weeks from the date of Plaintiff's compensable injury by accident or until further Order of the Commission. Those amounts which have accrued shall be payable in a lump sum.
2. A reasonable attorney's fee in the amount of twenty five percent of the compensation due Plaintiff under Paragraph 1 of this award is approved for Plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum award due Plaintiff shall be deducted from that sum and paid directly to Plaintiff's counsel. Thereafter, Defendant shall pay to Plaintiff's counsel every fourth check due Plaintiff.
3. Defendant shall pay for medical expenses incurred, or to be incurred, as a result of Plaintiff's right knee injury sustained on January 13, 2005, including both the patellar fracture and the meniscal tear, when bills for the same have been submitted according to established *Page 11 
Industrial Commission procedure. Defendant shall also pay, subject to Industrial Commission approval, the cancellation fee, if any, for Defendant's cancellation of Dr. Bloem's deposition.
4. Defendant shall pay the costs due the Commission.
This the ___ day of November, 2007.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ DANNY LEE MCDONALD COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/_____________ DIANNE C. SELLERS COMMISSIONER *Page 12